UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| DOCTOR'S ASSOCIATES LLC and SUBWAY IP LLC, <br><br> Plaintiffs, <br><br> -against- <br><br> LYUDMILA KHONONOV, <br><br> Defendant. | **MEMORANDUM AND ORDER** <br><br> Case No. 22-cv-7637 (FB) |

*Appearances:*
*For Plaintiffs*:
JOHN M. DOROGHAZI
Wiggin and Dana LLP
One Century Tower
P.O. Box 1832
New Haven. CT 06508

*For Defendant*:
VINCENT J. ANCONA
Ancona Associates
220 Old Country Road, 1st Floor
Mineola, New York 11501

**BLOCK, Senior District Judge:**

Plaintiffs Doctor's Associates LLC ("DAL") and Subway IP LLC ("SIP") (collectively, "Plaintiffs") are corporate entities that franchise and hold the intellectual property rights associated with Subway restaurants in the United States. Plaintiffs seek a preliminary injunction in their diversity suit against defendant Lyudmila Khononov ("Khononov") to prevent her from operating a competing sandwich restaurant in the same location as Khononov's former Subway franchise. Specifically, they seek to bar Khononov from continuing business at her restaurant, using names, decor, or slogans associated with Subway, holding her restaurant out as being associated with a Subway franchise, using non-public Subway

1

information, retaining any materials given to her by DAL, and serving Subway-approved food. At oral argument, Khononov maintained that she has no involvement with the restaurant in question. However, the factual allegations in Plaintiffs' motion do not warrant a preliminary injunction even if they are taken as true. Therefore, no evidentiary hearing is necessary. For the following reasons, Plaintiffs' motion is denied.

I.

Khononov ran a Subway franchise at 528A Clarkson Avenue in Brooklyn, New York between 2010 and 2022. In August of 2022, Khononov shuttered her Subway restaurant, and DAL terminated her franchise agreement on August 28, 2022. Khononov soon began operating a new restaurant in the same location under the name "URWAY SUBS." Plaintiffs claim Khonovov retained several aspects of SIL's intellectual property in violation of the parties' franchise agreement, including color schemes on the exterior awning and interior, recipes for breads and sauces, bread-baking methods, labels on cookie trays, and a mural of tomatoes. Plaintiffs also allege that Khonovov's operation of the restaurant violates their noncompete agreement, which restricts Khononov from engaging in a sandwich business within three miles of an extant or recently closed Subway location for three years after her franchise closes.

## II.

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, by a clear showing, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997). A party seeking a preliminary injunction must ordinarily establish "(1) irreparable harm; (2) either (a) a likelihood of success on the merits, or (b) sufficiently serious questions going to the merits of its claims to make them fair ground for litigation, plus a balance of the hardships tipping decidedly in favor of the moving party; and (3) that a preliminary injunction is in the public interest." *New York ex rel. Schneiderman v. Actavis PLC*, 787 F.3d 638, 650 (2d Cir. 2015) (internal quotations omitted). "Perhaps the single most important prerequisite for the issuance of a preliminary injunction is a demonstration that if it is not granted the applicant is likely to suffer irreparable harm before a decision on the merits can be rendered." *Bell & Howell: Mamiya Co. v. Masel Supply Co. Corp.*, 719 F.2d 42, 45 (2d Cir. 1983).

**A. Irreparable Harm**

To establish irreparable harm, a movant "must demonstrate an injury that is neither remote nor speculative, but actual and imminent and that cannot be remedied by an award of monetary damages." *Shapiro v. Cadman Towers, Inc.*, 51 F.3d 328, 332 (2d Cir. 1995) (internal quotation omitted). Importantly, "[w]here there is an adequate remedy at law, such as an award of money damages,

3

injunctions are unavailable except in extraordinary circumstances." *Moore v. Consol. Edison Co. of New York*, 409 F.3d 506, 510 (2d Cir. 2005) (citing *Morales v. Trans World Airlines, Inc.*, 504 U.S. 374, 381 (1992)).

Plaintiffs claim they will suffer irreparable harm because Khononov's use of Subway's information, materials, and trade dress without the standards mandated by the franchise agreement will harm Subway's goodwill with customers. They also argue Khononov's new store undermines DAL's ability to replace the franchise elsewhere in the same market and may cause it to lose customers to Khononov's new store. Finally, Plaintiffs argue that Khononov's actions will harm the value of the entire Subway franchise by emboldening other franchisees to use Subway secrets and materials without complying with their franchise agreements.

"Generally, when a party violates a [reasonable] non-compete clause, the resulting loss of client relationships and customer good will built up over the years constitutes irreparable harm," *Johnson Controls, Inc. v. A.P.T. Critical Sys., Inc.*, 323 F. Supp. 2d 525, 532 (S.D.N.Y. 2004) (alteration in original), especially where it would be "very difficult to calculate monetary damages that would successfully redress the loss of a relationship with a client," *Ticor Title Ins. Co. v. Cohen*, 173 F.3d 63, 69 (2d Cir. 1999) (granting preliminary injunction for alleged violation of noncompete agreement where defendant attempted to transfer title insurance clients away from plaintiffs). However, the Second Circuit "has rejected the

4

proposition 'that irreparable harm must inevitably be assumed in breach of covenant cases,'" instead, this determination "depends upon the factual particulars in each case." *Singas Famous Pizza Brands Corp. v. New York Advert. LLC*, 468 F. App'x 43, 46 (2d Cir. 2012) (internal quotations omitted).

In *Pirtek USA, LLC v. Zaetz*, 408 F. Supp. 2d 81 (D. Conn. 2005), our sister court rejected a claim of irreparable harm in the form of "loss of goodwill developed by having a presence in the territory for several years," "harm to [plaintiff's] existing franchise relationships," and "harm to its franchise system," which it found could be "adequately addressed by final relief on the merits or . . . with monetary damages." *Id.* at 86 (quoting *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002)). There, the plaintiff had already established a new "franchise in the territory occupied by [defendant]," therefore "continuing to have a presence and build goodwill in the territory." *Id.* Evidence presented at a hearing had also shown "exactly how much any illegally acquired goodwill was worth." *Id.*

Here, the harm to Plaintiffs is likely quantifiable in the form of monetary damages, as the franchise agreement contains a liquidated damages provision under which Khononov must make payments to Plaintiffs in the event that she breaches the noncompete covenant:

> "For three (3) years after the termination . . . of this [Franchise] Agreement, you will not directly or indirectly engage in . . . any sandwich business within three (3) miles of any location where a SUBWAY® restaurant operates or operated in the prior year. **You**

5

> **agree to pay [DAL] $15,000 for each sandwich business location you are associated with in the restricted area in violation of this Subparagraph, plus eight percent (8%) of the gross sales of such location during the three (3) year period, as being a reasonable pre-estimate of the damages [DAL] will suffer**. [DAL] or an affiliate may also bring an action in any Court having jurisdiction to seek damages, injunctive relief, or both . . . ."

Dkt. No. 13, Ex. 2 at ¶ 8(g) (emphasis added). At least one similar liquidated damages provision in a DAL contract has been successfully enforced against a former Subway franchise before. *See Doctor's Assocs., Inc. v. Kaur*, No. 3:19-CV-1148 (JCH), 2019 WL 7290950, at *2 (D. Conn. Oct. 29, 2019) (assessing damages based on "liquidated damages provision in the Franchise Agreement, which provides that [defendant] will pay DAL $250 per day for each day she is in breach"). The presence of a bargained-for liquidated damages provision makes it unlikely that any damages Khononov causes by violating the noncompete provision would be unquantifiable or abstract. Additionally, potential damages caused by lost customers is likely more easily quantifiable for Subway, a business with thousands of franchised restaurants servings millions of customers who each create low margins of profit, than for businesses like the *Ticor Title* plaintiffs, title insurance firms

for whom individual customers presumably had a large and unpredictable impact on profits. *See Ticor Title*, 173 F.3d at 66.

Regarding the loss of goodwill faced by Plaintiffs, Second Circuit courts recognize the risk that "former franchisees will use the knowledge that they have gained from the franchisor to serve its former customers, and that continued operation under a different name may confuse customers and thereby damage the good will of the franchisor," a danger that is amplified when a defendant operates out of the same location as the former franchise. *Golden Krust Patties, Inc. v. Bullock*, 957 F. Supp. 2d 186, 195 (E.D.N.Y. 2013) (internal quotation omitted). Any loss of goodwill from potential customers should be limited in this case, however, as there are several other Subway franchises within the three-mile radius described in the noncompete provision.[1] *See Pirtek USA*, 408 F. Supp. 2d at 86 (reasoning that plaintiff franchisor was "continuing to have a presence and build goodwill in the

---

[1] SUBWAY, Subway Locations in Brooklyn, available at https://restaurants.subway.com/united-states/ny/brooklyn (last accessed January 13, 2022) (indicating the presence of 40 Subway restaurants in Brooklyn, New York, including at least three in the East Flatbush section of Brooklyn, where Khononov's franchise was located).

7

territory" because it had a franchise in the same area that was formerly occupied by defendant, a former franchisee).

Finally, denying a preliminary injunction is not likely to harm the entire Subway franchise system by preventing Plaintiffs from enforcing noncompete agreements and emboldening other franchisees to violate their agreements, as Plaintiffs argue. Instead, plaintiffs are free to enforce them at a later stage of litigation. *See Pirtek*, 408 F. Supp. 2d at 86 ("A denial of this preliminary injunction will not encourage other franchisees that they can abandon their franchise agreements as they may be held liable for doing so"). Plaintiffs provide no reasoning here as to why an ordinary civil breach action would be insufficient to prevent other franchises from violating their agreements. Other courts in this circuit have rejected Plaintiff's argument where a plaintiff "fail[s] altogether to explain why an award of damages in the ordinary course of a civil breach of contract action would constitute insufficient 'adverse consequences' to deter such franchisee behavior and otherwise to protect the franchise relationship." *JTH Tax, Inc. v. Sawhney*, No. 19-CV-4035 (AJN), 2019 WL 3051760 (S.D.N.Y. July 11, 2019).

Under these circumstances, a finding of a likelihood of irreparable harm is not warranted. Because the Court finds that there is no irreparable harm sufficient

to justify the extraordinary remedy of a preliminary injunction, it need not review the other elements in the preliminary injunction analysis.

## III.

Plaintiff's motion for a preliminary injunction is DENIED.

    /S/ Frederic Block\
FREDERIC BLOCK\
Senior United States District Judge

Brooklyn, New York\
January 13, 2023